IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CARLOS BRITO-VILLAR,**

   **Plaintiff,**

vs.                                                                                          No.  10cv0837 DJS

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's (Brito) Motion and Memorandum in Support Thereof to Reverse or Remand Agency's Decision **[Doc. No. 18]**, filed February 7, 2011, and fully briefed on April 25, 2011.  On October 28, 2009, the Commissioner of Social Security issued a final decision denying Brito's claim for disability insurance benefits.  Brito seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

### I.  Factual and Procedural Background

Brito, now forty-seven years old (D.O.B. June 20, 1964), filed his application for disability insurance benefits on June 4, 2007, alleging disability since September 4, 2004 (Tr. 15), due to left knee injury and low back injury.  Tr. 213.  Brito testified he had schooling in Mexico up to the sixth grade but did not know how that compared to a sixth grade education in the United States.  Tr. 34.  Brito has past relevant work as a construction laborer.  Tr. 214.  On

October 28, 2009, the Administrative Law Judge (ALJ) denied benefits.  At step four of the sequential evaluation process, the ALJ found Brito could not perform his past relevant work but retained the residual functional capacity (RFC) to perform "light work . . . except only occasional climbing, stooping, kneeling, crouching, and crawling."  Tr. 23.  At step five, the ALJ, relying on the vocational expert's (VE) opinion, found Brito could perform other jobs described as light level work by the VE.  The VE opined Brito could perform the jobs of housekeeping cleaner, fast food worker, and car wash attendant.  The ALJ further found Brito's "statements concerning the intensity, persistence and limiting effects of [his alleged symptoms] were not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. 24.

On July 21, 2010, the Appeals Council denied Brito's request for review of the ALJ's decision.  Tr. 1.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Brito seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.  *Hamilton v. Secretary of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial

evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under

20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Brito presents the following issues on appeal: (1) whether the ALJ properly considered the opinions of his treating and examining physicians; and (2) whether the ALJ's finding at step five that he is able to communicate in English and has a marginal education is supported by substantial evidence.

## A.  Treating Physician Opinion

Brito contends the ALJ failed to properly evaluate the opinions of his treating and examining physicians. Specifically, Brito argues that although the ALJ stated in his decision that Dr. Maddux's opinions "have been given weight," the ALJ did not specify the weight she was affording Dr. Maddux's opinions. Pl.'s Mem. Support Mot. Remand at 20. Dr. Maddux examined Brito but is not considered a treating physician. Dr. Maddux completed an Estimated Functional Capacities Form on September 10, 2007. Tr. 659-664. Brito contends the ALJ adopted some portions of Dr. Maddux's report and rejected other portions. Pl.'s Mem. Support Mot. Remand at 21. As to Dr. Pyle, Brito argues the ALJ accorded his opinion "some weight" but again failed to specify the weight given. *Id.* at 20. Dr. Pyle is an internist and Brito's treating physician.

"[Tenth Circuit] case law, the applicable regulations and the pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is

4

analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The *Krauser* court set forth the two-step inquiry:

> The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded "controlling weight," on the matter to which it relates. Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Id. (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it is not to be given controlling weight.
>
> But finding such deficiencies to resolve the controlling-weight question against a claimant does not end the inquiry. Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned. <u>If this is not done, a remand is required</u>.

*Id.* (internal citations omitted)(emphasis added). SSR 96–2p states:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to " controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

96 WL 374188, at *4 (emphasis added). "Thus, a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Krauser,* 638 F.3d at 1331. The second inquiry is governed by the factors set forth in §404.1527. Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and

>the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). 'In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight.'" *Krauser,* 638 F.3d at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004)).

>In this case, the ALJ found:

>>Dr. Pyle endorsed Dr. Maddux's functional capacity estimate and worker's compensation impairment rating of the claimant on June 26, 2007. (Ex. 23F. p.17). Dr. Pyle also released the claimant to return to full duty on September 2, 2007. (Ex. 23F, p.18). Dr. Pyle **did not restrict** the claimant's abilities any further during a follow up visit in **December 2008 but he did write a note that the claimant has been unable to work due to his injuries**. (Ex. 23F, p.20). Dr. Pyle was the claimant's treating physician but he appeared to demonstrate sympathy for the claimant over time, such as writing a note about his inability to find work. **Dr. Pyle's opinions have been given some weight**.

Tr. 26 (emphasis added). In fact, at the December 17, 2008 follow up visit that the ALJ refers to above, Dr. Pyle noted:

>Patient presents today for a w/c (workers' compensation) f/u. Pt requesting refill of pain medication. Pt. also requesting proof of disability letter to move into low income housing. Pt. c/o back pain resulting from an industrial injury 9-1-04. Carlos continues to have chronic pain in the back and the left knee. **The level of pain is such that Carlos is precluded from gainful employment.**

Tr. 689 (emphasis added). Dr. Pyle diagnosed Brito with (1) low back pain, (2) DJD knee; (3) Knee pain, and (4) **Chronic Pain Syndrome**. *Id.* (emphasis added). Dr. Pyle refilled Brito's tramadol and Lortab.

Because the ALJ failed to follow the two-step inquiry set forth in *Watkins* and *Krauser*, the Court will remand this matter. On remand, if the ALJ chooses to reject Dr. Pyle's assessment, he "may not make speculative inferences from medical reports and may reject a

6

treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own . . . credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  Moreover, the ALJ "may not substitute his lay opinion for that of . . . Plaintiff's doctor['s] [medical opinion]." *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993).  The Court notes that Dr. Youssef also assessed Brito with "chronic pain symptomatology."  Tr. 483.  The ALJ may not ignore Dr. Pyle's chronic pain syndrome diagnosis and should consider it in redetermining Brito's RFC.

Although Dr. Maddux is not considered a treating physician under the regulations, he is considered a "nontreating source." *See* 20 C.F.R. §§404.1502 & 404.1527(d).  A nontreating source means "a physician . . . or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with claimant.  20 C.F.R. §404.1502.  An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who ha not examined [claimant].  20 C.F.R. §404.1527(d)(1).  On remand, the ALJ should consider Dr. Maddux opinion that Brito "need[ed] to change postures at will."  Tr. 659.  If the ALJ rejects this portion of Dr. Maddux's Estimated Functional Capacities, he must set forth his reasoning and support it with medical evidence in the record.

### B.  Brito's Ability to Communicate in English

Section 404.1564(b)(5) of the regulations states, in pertinent part:

Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, **we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do**.  It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. §404.1564(b)(5)(emphasis added).  In his decision, the ALJ found Brito had "a marginal education as is able to communicate in English."  Tr. 27.  The ALJ's finding that Brito was able to communicate in English is not supported by substantial evidence.  *See, e.g.*, Tr. 420 (limited history as Pt speaks very little English); Tr. 660 (does not speak English); Tr. 664 (would benefit from English language instruction); Tr. 676 (pt doesn't speak English, wife speaks for him); Tr. 679 (pt accompanied by spouse who is here to help answer questions as the patient is Spanish speaker); Tr. 681 ("Through his wife as translator, he says that . . . .").  On remand, the ALJ shall consider Brito's inability to communicate in English.

Under the regulations, a "marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."  20 C.F.R. §404.1564(b)(2).  The agency "generally consider[s] that formal schooling at a 6th grade level or less is a marginal education."  *Id.*  Brito testified he had gone "to school up until sixth grade, but I do not know exactly what the equivalent of that is here."  Tr. 34 (administrative hearing).  If there is any question as to whether Brito's sixth grade education significantly differs from a sixth grade education in the United States, the ALJ may question Brito regarding whether he can do simple arithmetic, whether he can write, etc.  However, the record appears to support the ALJ's finding that Brito has a marginal education.

## C.  Conclusion

Based on the record, the Court finds that the ALJ did not apply the correct legal standard and his RFC finding is contrary to law and not supported by substantial evidence.  Accordingly, this matter is remanded to allow the ALJ (1) to reconsider Dr. Pyle's diagnosis of chronic pain syndrome and his opinion of disability applying the *Watkins* factors, (2) to reconsider Dr. Maddux's opinion and, if he chooses to reject it in part, explain his reasoning and

support it with medical evidence in the record, and (3) to consider Brito's inability to communicate in English.

      A judgment in accordance with this memorandum opinion and order shall be entered.

_____
**DON J. SVET**
**United States Magistrate Judge**